UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


ATALIAN US NEW ENGLAND,      :
LLC                          :
                             :
v.                           :      C.A. No. 20-00133-JJM
                             :
JAMES NAVARRO, et al.        :


**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge


Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Plaintiff

Atalian US New England, LLC's Motion for Sanctions Against Defendants James Navarro and

Mohindranauth "Roger" Persaud.  (ECF No. 86).  Defendants filed Objections.  (ECF Nos. 92,

95).  Plaintiff filed a Reply.  (ECF No. 99).  A hearing was held on June 14, 2021.  For the following

reasons, I recommend that Plaintiff's Motion for Sanctions (ECF No. 86) be GRANTED.

**Background**

This Motion must be considered in the context of the Court's prior Order granting a similar

Motion for Sanctions against Defendant Taj Contract Cleaning, LLC ("Taj") that resulted in entry

of Default Judgment against Taj on June 25, 2021.  (ECF No. 74).  Taj (through its principal Mr.

Daneshwar "Dan" Persaud) was found to have intentionally deleted data from a smartphone and

laptop computer and manipulated evidence.  (ECF No. 72).  Plaintiff's Motion for Sanctions

against Taj was filed on February 12, 2021 and, thus, the parties have been on notice since it was

filed of the potential consequences of deleting and/or withholding evidence.  On the heels of the

sanctions imposed upon Taj, Plaintiff now alleges that both James Navarro and Roger Persaud

committed discovery violations that also warrant the imposition of Default Judgment.  There is no allegation or suggestion that counsel for either Mr. Navarro or Mr. Persaud was involved in, or aware at the time of, the alleged violations.

Plaintiff's Memorandum (ECF No. 86-1) outlines in detail its allegations regarding the destruction and withholding of evidence in this case.   Further, Plaintiff supported the allegations by both direct and circumstantial evidence including the clear and detailed reports of a digital forensic expert, J-Michael Roberts.  (ECF Nos. 87-6 and 101).  Neither Defendant submitted a rebuttal expert report or otherwise attempted to controvert the expert's findings.  Thus, Plaintiff's expert report is uncontroverted and, as previously stated, clear and persuasive.  Based on my review of the parties' submissions, I find that Mr. Navarro and Mr. Persaud willfully deleted and/or withheld relevant evidence with the intent to deprive Plaintiff of the information's use in this litigation and to mislead the Court.  The evidence supporting these serious findings is summarized below.

### A.    Mr. Navarro

As to Mr. Navarro, it is undisputed that he received multiple evidence preservation requests from Plaintiff in this litigation.  (ECF No. 99 at p. 6, n.12).  Additionally, as previously noted, Mr. Navarro was on notice that Plaintiff moved for sanctions against Taj in early 2021 for erasing data from a smartphone and laptop.  With this background, Mr. Navarro admits that he identified relevant documents (Contract Data Forms or "CDF"s) stored on his personal iPad at the outset of this litigation.  (See Affidavit of James Navarro, ECF No. 92-1 at ¶¶ 8, 9). He further contends that he placed these relevant documents in the "trash bin" of his iPad and that he thereafter "reset" his iPad on April 24, 2021, four days before producing it to Plaintiff.  Id. at ¶¶ 10,18.  He did not inform Plaintiff that he reset his iPad before production.  Finally, he concedes that he owns an

iPhone that he agreed to produce but subsequently "decided against allowing the inspection" thereof. Id. at ¶ 26. He asserts now that he would be willing to voluntarily produce the iPhone "as long as an agreed to protective order is in place." Id. at ¶ 27. However, a stipulated protective order has been in place since June 17, 2020. (ECF No. 31). Finally, Mr. Navarro claims that he reset and erased his iPad to shield personal photographs from being produced to Plaintiff. The crux of Mr. Navarro's argument as to the iPad is that, while he admittedly placed relevant evidence in the "trash bin" and admittedly reset the device and deleted all data on his iPad, he did not do so intentionally. (ECF No. 92-1 at ¶ 10, 20).

In response to Mr. Navarro's claim that his actions were, at most, negligent, Plaintiff counters with an abundance of forensic and circumstantial evidence. The forensic evidence, outlined in the Affidavit and Supplemental Affidavit of Plaintiff's expert, details the Apple iPad interface, including the affirmative steps that Mr. Navarro was required to take, and the notices and "warnings" that Mr. Navarro would have encountered before he could have deleted the CDF files. Such notices would have required that he acknowledge the item would be "deleted immediately" and/or "recently deleted items may be permanently deleted by your storage provider." (ECF No. 101 at ¶ 12). Moreover, the process of "wiping" or performing a factory reset to his iPad, which Mr. Navarro admittedly undertook on April 24, 2021, would have required him to affirmatively select the option to "Erase iPad" after encountering the notice that "[e]rasing will sign out of your Apple ID and remove your personal data, so this iPad can be safely traded in or given away.…Are you sure you want to continue? All media, data, and settings will be erased. This cannot be undone." Id. at ¶ 16. Mr. Navarro unconvincingly testifies in his Affidavit that he "moved" the CDF files to the "trash bin" on the iPad "believing they would remain there until [he] deleted them permanently" and that "[u]nbeknownst to me, the software on my iPad

-3-

automatically and permanently deleted [them]." (ECF No. 92-1 at ¶¶ 10-11). Given that Mr. Navarro would have necessarily encountered these explicit warnings and had to consent to them prior to erasing his data from the iPad, his claim that his actions were unintentional is not credible and is flatly rejected. There was nothing automatic about it, and the only credible conclusion to reach based on this record is that Mr. Navarro intentionally deleted the documents. His credibility is further eroded by his unconvincing assertion that he erased his iPad to shield personal photos from disclosure. Such argument is, however, unsupported by the factual history. According to Plaintiff's expert, the forensic evidence reveals that Mr. Navarro viewed numerous personal photos on his laptop on April 26, 2021 (two days after the iPad reset) and then produced that laptop with the photos included shortly thereafter to Plaintiff for forensic imaging. (ECF No. 101 at ¶¶ 21-27). It makes no sense that he would only be concerned about the disclosure of personal information on one device and not the other.

As to the iPhone, there is no dispute that Mr. Navarro shifted gears and refused to voluntarily produce it for imaging and inspection and did so shortly after settlement talks ended and after he had reset and wiped the iPad. (ECF No. 87-14). Plaintiff also credibly argues that Mr. Navarro provided false testimony regarding the lack of relevant information on the iPhone. (ECF Nos. 86-1 at pp. 17-20 and 87-1 at p. 24). In particular, Plaintiff's expert identifies evidence that, shortly after Mr. Navarro was served in this case in early April 2020, an iPhone was used to take photos of a MacBook Air screen displaying relevant business information of Plaintiff and subsequently emailed to an account connected to Mr. Navarro. (ECF No. 87-6 at ¶¶ 29-32). Further, on May 28, 2020, screenshots were taken of an iPhone text message conversation involving Mr. Navarro and related to this lawsuit. Id. at ¶ 31. These screenshots were subsequently

emailed to the same email account connected to Mr. Navarro.  Id.  Finally, these emails were sent

from an IP address associated with Mr. Navarro's residence.  Id. at ¶ 32.

### B.      Mr. Persaud

The   dispute   as   to   Mr.   Persaud   centers   around   a   personal   Gmail   account,

"mohindra1@gmail.com."    (Affidavit of Roger Persaud, ECF No. 95-3 at ¶ 2).    Plaintiff

convincingly argues that Mr. Persaud provided false testimony regarding his use of and ability to

access his personal Gmail account, and unnecessarily caused it to incur costs and undertake

substantial effort to try to access the account and learn the truth about its use.  In his Affidavit, Mr.

Persaud states that the account was created by his former employer, Suburban, and that he has not

accessed the account since November 2019, when he left his position at Suburban.  Id. at ¶¶ 1-2.

He further states that he remains unable to access the account.  Id. at ¶ 6.  The account recovery

email is his prior work email at Taj, and the account recovery phone number ends in "59."  Id.  He

testified that he did not know the password to the account and could not access it with the recovery

phone number that ends in "59" because he does not own a phone with a number that ends in "59."

Id.

Because he testified that he could not access the account and did not use the account,

Plaintiff was forced to incur the expense of requesting the relevant information directly from

Google.  As a result of numerous meetings, subpoenas, and multiple "meet and confers" with

Google's attorneys, ECF No. 99 at p. 24, Plaintiff ultimately obtained limited "non-content" email

metadata for the subject account.  (ECF No. 101 at ¶ 42).  The data revealed that, contrary to his

assertions, Mr. Persaud's Gmail account was used on an "ongoing basis" and successfully accessed

on September 10, 2020, September 13, 2020, and again on March 7, 2021. The last logout occurred

on April 9, 2021 shortly after Mr. Persaud's deposition.  Id.  The subscriber information obtained

from Google also indicated that the account was accessed with the correct credentials <u>or</u> by use of the password recovery process. <u>Id.</u> Moreover, the IP address where the login occurred was "within, or within the close vicinity of" Mr. Persaud's residence. <u>Id.</u> at ¶ 52.

Although the content of the emails was not produced, the metadata provided demonstrates that Mr. Persaud was exchanging emails with the Rhode Island Department of Labor and Training starting in November 2019, and further engaged in several email exchanges in 2020-2021 with a Johnston, Rhode Island car dealership as well as an exchange of ongoing emails from 2015 through 2021 with Florida real estate professionals. <u>Id.</u> ¶¶ 46, 49, 50. Tellingly, Plaintiff was also able to uncover during discovery that Mr. Persaud was associated with a phone number that ended in "59" at various times during his employment with Suburban, including various emails and invoices that indicate that the phone number ending in "4459" was Roger Persaud's number. <u>Id.</u> ¶¶ 58-60. This information contradicts Mr. Persaud's claims regarding his lack of use and inability to access this email account.

Plaintiff also convincingly points out that Mr. Persaud used the Gmail account to communicate with real estate professionals in Florida when he denied owning any property there during his April 6, 2021 deposition. (ECF Nos. 99 at pp. 21-22 and 101-1 at pp. 6-7). He also historically used the Gmail account (and his personal flip phone) to communicate with Ms. Juana Peguero. (ECF No. 99 at p. 21). Tellingly, and shortly after the deposition, Mr. Persaud and Ms. Peguero quitclaimed ownership of a condominium in Polk County, Florida solely to Ms. Peguero on May 17, 2021 and, later on June 11, 2021, Mr. Persaud and Ms. Peguero sold another condominium they owned located in Orange County, Florida to a third party by Warranty Deed. (ECF No. 99-2). This evidence reasonably suggests that Mr. Persaud was being untruthful about

not owning any property in Florida at the time of his deposition in a likely effort to hide and dissipate assets.

**Analysis and Recommendation**

"[S]poliation is the 'intentional, negligent, or malicious destruction of relevant evidence.'" Gordon v. DreamWorks Animation SKG, Inc., 935 F. Supp. 2d 306, 313 (D. Mass. 2013) (citation omitted). In the present case, the parties' admissions, together with the expert testimony and circumstantial evidence, all establish that spoliation occurred. In fashioning an appropriate sanction for the spoliation, the Court considers five factors: "1) whether the defendant was prejudiced as a result of [the destruction of evidence]; 2) whether the prejudice can be cured; 3) the practical importance of the evidence; 4) whether the plaintiff was in good faith or bad faith; and 5) the potential for abuse if the evidence is not excluded." Gordon, 935 F. Supp. 2d at 315. (citation and quotations omitted). The Gordon Court went on to explain that "[t]he primary considerations are the prejudice to the non-spoliating party and the degree of fault of the offending party. The court must strive to tailor the sanction to the circumstances of the spoliation, bearing in mind that dismissal 'is usually considered appropriate only when a party maliciously destroys relevant evidence for the sole purpose of preventing an adverse party from examining it.'" Gordon, 935 F. Supp. 2d at 315 (internal quotation omitted).

The factual background presented details the second and third instances of spoliation in this case. Mr. Navarro admitted to deleting relevant electronic materials, and Mr. Persaud denied being able to access materials, despite overwhelming forensic and circumstantial evidence that he had been actively using the Google email account. Given that both parties were on notice of Taj's destruction of evidence, the Court is frustrated to be faced with additional spoliation and forced to weigh the present facts. To begin, the Court is not persuaded by Defendants' arguments that an

adverse jury instruction or some lesser penalty would remedy the discovery violations described herein.  Despite Defendants' claims that they either did not intend to delete evidence or were unable to access evidence, their claims do not square with the overwhelming weight of the evidence presented.  The only reasonable conclusion to draw from this record is that Mr. Navarro and Mr. Persaud intended, by their respective actions, to deprive Plaintiff of relevant information.  As such, the Court has the discretion to presume that the lost information was unfavorable to the party who failed to preserve it; instruct the jury of this adverse presumption; or dismiss the action or enter default judgment.  Rule 37(e)(2), Fed. R. Civ. P.  In the previous Report and Recommendation, I indicated that the serious sanction of entry of Default Judgment against Taj would "deter this party, and others, from engaging in this type of misconduct in future proceedings."  Unfortunately, the sanctions for spoliation did not deter the conduct described herein.

In terms of the penalties they should face, Defendants contend that the Motion for Sanctions should be denied and dismissed.  Mr. Navarro focused his arguments on a claimed lack of prejudice to Plaintiff and the contention that default judgment is too harsh a sanction.  Mr. Persaud argues that a review of the data indicates that 267 emails were "responsive to terms related to this litigation" and that 231 of those emails were sent or received from Suburban or Plaintiff's email servers. Mr. Persaud then argues that "at issue" is only 36 emails, which remain recoverable because they are in the Gmail account.  (ECF No. 95 at p. 4).  Mr. Persaud indicates now that he can "try to obtain the 36 emails." Id. at p. 8.  Plaintiff reasonably describes this offer as too little and too late.

As noted in connection with the earlier sanctions' motion, "it is nearly impossible, at this point, to attempt to reliably identify the nature of the lost information or to reliably determine what

information actually existed during the relevant period" and the same has proven to be true for the information at issue in the present Motion. (ECF No. 72 at p. 3). Mr. Navarro admitted to deleting the information, while Mr. Persaud denied the ability to access it at all, despite the presence of strong and convincing evidence that his sworn Affidavit misrepresents what actually occurred. Unfortunately, as with Taj, a default judgment is the only effective sanction to remedy this intentional discovery violation. The interests of justice and upholding the credibility of our civil litigation system dictate the entry of default judgment as the only reasonable sanction on this record, and I so recommend pursuant to Rules 37(b)(2)(A)(vi); 37(c)(1)(C); and 37(e)(2) and the Court's inherent power to protect the integrity of the judicial process. See Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989).

**Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Motion for Sanctions (ECF No. 86) be GRANTED and that Default Judgment enter against Defendants James Navarro and Roger Persaud as to all claims in Plaintiff's Amended Complaint.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

   /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 12, 2022