UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ATALIAN US NEW ENGLAND, LLC, on its own behalf and as successor-in-interest to SUBURBAN CONTRACT CLEANING, INC., <br>     Plaintiff, <br><br> v. <br><br> JAMES NAVARRO; MOHINDRANAUTH "ROGER" PERSAUD; and TAJ CONTRACT CLEANING, LLC, <br>     Defendants. | C.A. No. 1:20-cv-00133-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court is Plaintiff Atalian US New England's ("Atalian") Motion for Assessment of Damages Against Defendants James Navarro, Mohindranauth "Roger" Persaud, and Taj Contract Cleaning, LLC ("Taj") and for Entry of Final Judgment. ECF No. 104.

I.  **BACKGROUND**

Atalian, a cleaning contractor,[1] sued two former employees—Mr. Navarro and Mr. Persaud[2]—and a cleaning subcontractor, Taj. ECF No. 41 at 1-3. Atalian advanced several legal theories that stemmed from two major schemes. *Id.* at 13-21 (alleging ten counts). First, it claimed that employee Defendants ran a "ghost employee" scheme. *Id.* at 4-9. As part of this scheme, employee Defendants manufactured records in which fictional employees performed fictional jobs for which Atalian compensated them. *Id.* Employee Defendants then deposited into their personal bank accounts these payments to fictional employees. *Id.* Second, Atalian claimed that employee Defendants subcontracted its business to Taj in exchange for bribes or kickbacks. *Id.* at 9-12.

Due to gross misconduct during discovery, the Court entered default judgment for Atalian on the liability issue. *See* ECF No. 103 (recommending that default judgment enter for Atalian, which the Court later adopted by text order). Atalian now seeks an accounting of its damages under various common law theories and statutory provisions. ECF No. 104. Because Defendants requested an evidentiary hearing but did not explain what such a hearing would accomplish, the Court issued a Show Cause Order to get clarity on this request. ECF No. 117. In their response

---

[1] In December 2017, Atalian acquired Suburban Contract Cleaning, Inc. ("Suburban"), another cleaning contractor. ECF No. 41 at ¶¶ 2-3. Much of the conduct described involved Suburban before its merger with Atalian. *See id.* at ¶ 4. Atalian now asserts Suburban's rights as its successor-in-interest. *Id.* For ease of reference, the Court refers to "Atalian" as encompassing both Atalian and Suburban.

[2] For ease of reference, the Court refers to Mr. Navarro and Mr. Persaud as "employee Defendants" to distinguish them from Taj, an LLC defendant.

to the Court's order, Defendants withdrew their request for an evidentiary hearing. ECF No. 118. The Court is thus left to decide these issues based on the current briefs and record before it.

## II.   DISCUSSION

The parties concede that, because the Court entered default judgment for Plaintiff, the facts that Atalian alleged in the complaint are deemed admitted. ECF Nos. 104 at 18, 110 at 1, 112-1 at 3. The parties, however, vigorously dispute whether these facts adequately demonstrate compensable injury. *Compare* ECF No. 104 at 49 (requesting almost $4,000,000 plus costs, interest, and punitive damages), *with* ECF No. 110 (contesting the appropriateness of any damages), *and* ECF No. 112-1 (same). Atalian seeks $1,031,703.37, jointly and severally, from employee Defendants for the ghost employee scheme. ECF No. 104 at 49. It seeks $1,834,392, jointly and severally, from all three Defendants for the bribery scheme. *Id.* It seeks $1,063,550.42, jointly and severally, from employee Defendants for unjust enrichment (their salaries from Atalian). *Id.* Atalian further seeks punitive damages in an amount that the Court determines and prejudgment interest and costs. *Id.* Defendants[3] vigorously dispute these calculations on factual and legal bases. ECF No. 110 at 1-3. At bottom, Defendants argue that Atalian has not sufficiently proven

---

[3] Although Mr. Navarro filed a separate brief from Mr. Persaud and Taj's, the brief explicitly incorporates the arguments from Mr. Persaud and Taj's brief. ECF No. 112-1 at 3-4. Mr. Navarro's additional arguments also are made in substantially similar forms in Mr. Persaud and Taj's brief. *Compare* ECF No. 110 at 21 (Mr. Persaud and Taj's brief), *with* ECF No. 112-1 at 4-5 (Mr. Navarro's brief). Accordingly, the Court treats Defendants as making unified arguments for purposes of Atalian's motion.

3

its damages, and some damages, such as punitive damages, must be decided by a jury. *Id.* The Court assesses each of these disputes in turn.

### A. Damages from the Ghost Employee Scheme

Atalian seeks $1,031,703.37 for losses from the ghost employee scheme based on a forensic financial investigation that it conducted. ECF No. 104 at 20. The investigation identified 2,071 checks that Atalian had issued to fictional employees. *Id.* Employee Defendants' financial institution records also confirmed that they had deposited several of these fraudulent checks into their personal accounts. *Id.* at 20-24. At his deposition, Mr. Navarro testified that that he had deposited many of these fraudulent checks into his personal account. *Id.* at 22-23. And at his deposition, Mr. Persaud conceded that he had no cause to believe that his personal financial institution records—which reflected similar conduct—were inaccurate. *Id.* The accounts between these two individuals revealed only $402,113.38 of the one million plus dollars that Atalian claimed employee Defendants had swindled from it. *Id.* Atalian thus asserts that these financial institution records only reflect the accounts held at financial institutions that employee Defendants disclosed. *Id.* at 24. Nor would these accounts reflect checks that other individuals deposited under the direction of one or both employee Defendants.

Defendants' response that "Atalian should have to prove it sustained an injury before a jury" is self-defeating. ECF No. 112-1 at 4. In other parts of their papers, Defendants repeatedly rehearse that "injury" is an element of the legal claims that Atalian pursues. *See infra* Part II.B.1. But by operation of the default judgment, the

injury element of any claim is satisfied. *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 1993) (internal quotation marks omitted) (citation omitted) ("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated."). Defendants thus are left to challenge only the accounting of damages. *See id.* On that front, Mr. Persaud (and effectively the other two Defendants) contend that "Atalian must demonstrate which of the payments it believes to have gone to ghost employees, and afford [Mr.] Persaud the opportunity to reply."[4] ECF No. 110 at 20. Curiously, however, Defendants about face in the next sentence and concede that "Atalian has the evidence to make such a showing." *Id.* This concession is understandable given that Atalian conducted an extensive investigation into this matter and produced the investigation's results as evidence of its damages. ECF Nos. 106-1 (summarizing the payments to alleged ghost employees), 106-2 (presenting copies of the alleged ghost checks). The Court leaves this tortuous trail of arguments confused. If Defendants concede that Atalian has the requisite evidence, what is left for them to dispute?

However, if Defendants argue that Atalian has evidence that might be sufficient, they provide no clues as to why they think that the evidence might be insufficient. Defendants do not explicitly dispute Atalian's accounting of damages

---

[4] The notion that "Atalian cannot skip this important step of fact-finding" (ECF No. 110 at 20) also proves puzzling given that default judgment was entered because Defendants intentionally interfered with the original fact-finding process at the discovery stage. *See* ECF No. 103.

5

related to the ghost employee scheme. *See* ECF Nos. 110, 112-1. Atalian attaches the results of its forensic financial investigation to its Motion to Assess Damages. ECF Nos. 106-1 at 3. Atalian also has produced the alleged ghost checks that its investigation identified. ECF No. 106-2. Defendants do not provide any evidence to contradict this accounting or any theories on why this accounting might be inaccurate. *See* ECF Nos. 110, 112-1. Defendants seek only further proof, such as signed affidavits testifying to these damages. *See, e.g.*, ECF Nos. 110 at 2-3, 19-21, 112-1 at 3-5. Yet without a theory of their own, the Court is unclear on what further proof Defendants expect. Atalian underwent an extensive review of the conduct, financial institution records, and other relevant evidence—which it details in its papers—to generate the summaries that accompany its motion. ECF No. 104 at 20-22. As a result of this inquiry, Atalian has identified many of the "ghost" checks that it believes were written and sums their amounts using a simple mathematical calculation. *Id.* And employee Defendants effectively admitted to approximately $400,000 of these damages via their deposition testimony. *Id.* at 22-24. In other words, Mr. Persaud (and the other two Defendants) has had "the opportunity to reply" to Atalian's claims via the briefs. ECF No. 110 at 20. Given that Defendants have not replied, the Court remains confused about what more Defendants expect Atalian to prove.[5] Accordingly, the Court accepts Atalian's calculation of damages from the

---

[5] Defendants' withdrawal of their request for an evidentiary hearing also leaves them in a tricky position. Their argument effectively becomes that Atalian does not have the requisite proof of damages and an evidentiary hearing could not produce enough evidence to suffice. This proposition is much tougher to support than

ghost employee scheme and awards Atalian $1,031,703.37, jointly and severally, against Mr. Navarro and Mr. Persaud.

### B. Damages from the Taj Scheme

Atalian seeks a principal amount of $917,196 in damages for the bribery scheme, which comprises $480,900 in bribes paid by Taj to employee Defendants and $436,296 in profits earned by Taj. ECF No. 104 at 24. Atalian then argues that this amount should be doubled pursuant to R.I. Gen. Laws § 11-7-6. *Id.* at 35-38. Defendants respond that Atalian sustained no financial injury from the bribery scheme, and in fact, Atalian benefited from the conduct. ECF No. 110 at 3-5, 9-12. Defendants thus argue that, because Rhode Island's bribery statute requires injury—unlike the law in other jurisdictions, which bases damages on the value of the bribes—Atalian has shown no injury that would entitle it to damages. *Id.* at 3-12. To begin, the Court must distinguish between a finding of liability and a finding of damages. The Court accepts any element of a legal claim—including injury and causation—that Atalian alleged in the complaint by operation of the default judgment. *Ortiz-Gonzalez*, 277 F.3d at 62-63. The Court thus cannot entertain further fact-finding on whether Atalian sustained injury. Nor can the Court engage in its own inquiry into causation. Still, Atalian must proffer evidence on the degree of injury (i.e., amount of damages) that resulted from this conduct. The dispute amounts to two questions. First is whether Atalian's injury is compensable (i.e., calls

---

their earlier one that an evidentiary hearing is required to assess whether Atalian has met its burden of proof.

for damages under Rhode Island law). Second is what the appropriate measure of damages is under Rhode Island law. The Court then turns to whether Atalian has proffered sufficient evidence of damages under the appropriate measure.

### 1. Whether Atalian's Injury is Compensable

Defendants first argue that, while Atalian may have suffered injury, Rhode Island law does not necessarily provide for damages for such injury. *Id.* at 7-9. Defendants argue that employee Defendants did not have the authority to perform this conduct, and thus could not have caused the harm. *Id.* at 4-5. But this argument contradicts the complaint's allegations of causation. *See* ECF No. 41 at ¶ 93 (alleging that, "[a]s a direct and proximate result of [Mr.] Navarro and [Mr.] Persaud's actions, Atalian . . . has suffered substantial monetary damages and harm"). Because the Court must accept the complaint's allegation of causation, Atalian need show only the amount of damages that it sustained from the bribery scheme. To be sure, if Atalian were claiming damages that demonstrably flowed from unrelated conduct, those damages would be excluded. Defendants' assertion thus seems to be that, because these two employees lacked the requisite authority to execute this scheme, other factors must have caused the injury. *See* ECF No. 110 at 4-5. But this argument proves untenable given the now accepted allegations in the complaint. *See* ECF No. 41 at 15-16. Atalian specifically alleged that employee Defendants directly and proximately caused harm by awarding Atalian's subcontracts to Taj in exchange for bribes. *Id.* These facts leave no room for Defendants to present alternative causes.

Defendants next argue that Atalian benefited from using Taj as a subcontractor because this relationship enabled Atalian to subvert the union-employee requirement. ECF No. 110 at 9-11. Even so, that fact alone does not preclude injury. Atalian's objective of subcontracting work does not rely on using Taj specifically, rather than other subcontractors. Taj became Atalian's de facto subcontractor *because of* the bribes. ECF No. 41 at ¶¶ 54-57. Atalian could have used another subcontract to accomplish the same objective. ECF No. 114 at 35 n.126. If Atalian had not found a suitable subcontractor, it claims that it would have done the work itself and still turned a profit. *Id.* at 41. Because the Complaint alleges that Atalian suffered injury from using Taj as a subcontractor—a decision that happened only through bribery—Taj cannot dispute that Atalian suffered injury from using it as a subcontractor. Now, Taj still can argue that Atalian has not sufficiently demonstrated any monetary damages that should flow from this fraudulently formed relationship. Or, at least, Taj could argue that Atalian's damages should be offset by benefits that it received from this relationship. But these arguments speak to Atalian's evidence of the amount of damages that it claims, not to whether Atalian legally is entitled to damages. Defendants' suggestion that Atalian wanted to employ subcontractors is *not* inconsistent with Atalian's argument. Accordingly, Atalian suffered injury from using Taj as a subcontractor, a decision that it would not have made were it not for the bribes. ECF No. 41 at 15-16.

### 2. Appropriate Measure of Damages Under Rhode Island Law

Defendants additionally argue that Atalian has not proffered any reasonable damages calculations beyond the amount of the bribes and Taj's profits, which it claims to be inappropriate measures of damages under Rhode Island law. ECF No. 110 at 3-9. Given the lack of binding authority on point, Atalian uses these measures as helpful guides that comply with Rhode Island law. *See* ECF No. 114 at 30-33 (interpreting the Rhode Island bribery statute). Atalian thus argues that it should receive two forms of damages: the value of the bribes that Taj paid to employee Defendants and Taj's profits. ECF No. 104 at 24. The Court discusses each form of damages in turn.

#### a. Value of the Bribes Paid to Employee Defendants

Rhode Island's criminal bribery statute recognizes "the monetary equivalent of the gift or valuable consideration" as one appropriate way to calculate the criminal fine that a court could impose. R.I. Gen. Laws § 11-7-5. Rhode Island's civil bribery law is a section of the criminal statute that allows for civil recovery for violating the criminal statute. *See id.* §§ 11-7-6. Civil damages thus reasonably can be informed by the criminal fine for the corresponding offense. In several other jurisdictions, the value of the bribe is a minimum acceptable measure of damages. *See, e.g., Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 576 (7th Cir. 2004); *Brit. Am. & E. Co. v. Wirth Ltd.*, 592 F.2d 75, 80 (2d Cir. 1979). The bribes paid estimate the higher value that Atalian paid to Taj compared to what it would have paid another subcontractor or what it would have paid to perform the work itself. Defendants' argument about

excluding the value of the bribes because they are a cost to Taj misunderstands economics. *See* ECF No. 110 at 11-12. If it were less expensive for Taj not to pay out bribes and lower its prices to win the contracts, why did it *not* take that approach in the first place? If Taj could have lowered its prices and, *with certainty*, won contracts from Atalian in competitive bidding scenarios, then it would have done so. The bribes at least bought Taj the certainty that it would win contracts. The better economic view is that, for each contract, Taj's expected profits from paying a bribe would be at least as much as they would have been, even if Taj could have lowered its prices to compete for that contract.

The value of the bribes, therefore, reflects the extra total expenses that Taj paid to increase its expected profits from those in a competitive bidding scenario. And knowing that it would be guaranteed the contract, Taj's incentive is to pass those costs on to Atalian in the form of a higher contract price. In other words, Taj now maximizes its profits by increasing the contract price quoted to Atalian by the value of the bribes. Before the contract was guaranteed (without bribery), Taj had an incentive to price competitively to maximize its probability of receiving the contract. Now that Taj is guaranteed the contract, it no longer has that incentive to price competitively.[6] If Taj is guaranteed the contract, it could theoretically also pass *all*

---

[6] Consider the following hypothetical in which a contract from Atalian is worth $100,000 (the price that Taj quotes Atalian) and Taj's cost of performing the contract (excluding bribes) is $30,000. Without bribery, assume that Taj has a 50% chance of winning the contract. Without bribery, Taj's expected profits are $20,000 (($100,000·0.5) - $30,000 = $20,000). The Court made up the fact that, at this price, Taj had a 50% chance of winning the contract. Taj presumably would experiment with these numbers to find what contract price and corresponding probability of

*its costs* to Atalian in the form of a higher contract price without worrying about having a reduced probability of winning the contract. In any event, Atalian does not claim that Taj had significant other costs that it would have passed on. To the contrary, Atalian claims that it provided the labor and resources for these contracts and seeks to recover those costs under other legal theories. The Court, therefore, finds no reason to assess additional damages beyond the value of the bribes.

To be sure, the full value of the bribes may not accurately reflect the injury to Atalian. For example, Taj might have chosen to lower its contract price because it was guaranteed to win the contract. Consider the hypothetical from the previous footnote. Based on those numbers, Taj could lower its baseline contract price down to $20,000, at which point it would be indifferent between paying bribes and not paying bribes. If Taj lowered its baseline contract price by that much, Atalian would be harmed only if the value of the bribes were greater than $50,000.[7] But Taj would need some specific reason to lower its contract price, such as the risk of compromising

---

winning the contract yield the maximum profit. With bribery, however, the calculation looks different because the $100,000 contract price number is no longer tied to the value of the contract. Because Taj now is guaranteed the contract (100% probability of winning it), it can maximize its profits by passing on its costs, including the value of the bribe ("$V_{Bribe}$"), in the form of the higher contract price. Taj also can modify the baseline (i.e., excluding passthrough of bribes and other costs) contract price ("$P_{Contract}$") from $100,000. The new calculation looks like this: Profit = (($P_{Contract}$ + $V_{Bribe}$ + $30,000) · (1.0)) - ($30,000 + $V_{Bribe}$) = $P_{Contract}$. The value of the bribe thus turns on what the parties involved can negotiate based on their relative positions. Likewise, the baseline contract price turns on how high Taj can set it without risk of compromising the scheme (e.g., a million-dollar contract price in this example might look suspicious).

[7] In this case, the cost to Atalian would be: $100,000 = $20,000 ($P_{Contract}$) + $30,000 (costs) + $50,000 ($V_{Bribe}$).

the scheme or that Taj made an inaccurate or irrational calculation. Defendants point to no facts that signal that such a reason existed here. Instead, they resort to the more general proposition that Plaintiff suffered no injury, and thus cannot prove damages. *Id.* at 3-12.

Based on the record, however, it is likely that Defendants did not need to make price reductions. Taj had no significant labor or resource costs to pass on to Atalian. *See, e.g.*, ECF No. 41 at 109 (alleging that Taj relied on Atalian's resources to perform its work). All three Defendants collaborated on the bribery scheme, so it is unlikely that Taj made a miscalculation based on incomplete information or that employee Defendants persuaded Taj to lower the price to minimize their chances of being exposed. Given that Taj's sole member is Mr. Persaud's brother, it is likelier that Defendants collaborated to their collective benefit—i.e., they maximized the value of Taj's profits plus the bribes. In fact, Taj earned six-figure profits for years. The Court declines to disregard this useful heuristic on which other jurisdictions rely. The value of the bribes, therefore, represents a reasonable measure of the injury that Atalian sustained within the language of R.I. Gen. Laws § 11-7-6.

### b.  Taj's Profits

Atalian additionally argues that its injury includes the profits that Taj earned from performing the work. If Atalian could recover only the value of the bribes, Taj would still have made a profit from paying the bribes. Even though employee Defendants might be stripped of their benefit and deterred from engaging in such conduct, Taj would not face the same incentives. Equitable principles dictate that an

actor should not profit from unlawful conduct. *See, e.g.*, RESTATEMENT (THIRD) OF AGENCY § 8.02 (Am. L. Inst. May 2023 Update) ("The principal may recover any material benefit received by the agent through the agent's breach, the value of the benefit, or proceeds of the benefit retained by the agent."). While several jurisdictions agree with this logic, one must be careful in generalizing commercial bribery law because it encompasses elements of various areas of law such as torts, contracts, and agency, depending on the specific jurisdiction. Doug Rendleman, *Commercial Bribery: Choice and Measurement within a Remedies Smorgasbord*, 74 Wash. & Lee L. Rev 369, 381-82 (2017). Different jurisdictions apply principles from these areas of law to varying degrees. *See id.* The nature of the specific jurisdiction's cause of action—especially one rooted in common law—thus remains critical to fashioning an appropriate remedy. *Id.* at 382 (footnote omitted) ("Courts' common law reasoning proceeds through policy justification to rule, and through rule to result and remedy.").

Although Rhode Island's commercial bribery law is rooted in statute, this codification yields inadequate insight into the nature of the action. *See* R.I. Gen. Laws §§ 11-7-3, 11-7-4, 11-7-6. The language of the statute is indeterminate regarding the General Assembly's intent in defining the nature of civil bribery. To justify their position, Defendants highlight specific words like "injury" to suggest limiting the remedial measures to those available under tort law. ECF No. 110 at 3-5. Without further context, however, the Court finds it inappropriate to engage in such speculation about the meaning of the statue. In any event, Atalian also alleged an equitable claim (unjust enrichment) against Taj. ECF No. 41 at ¶¶ 117-22. Taj

14

inequitably secured these contracts from Atalian, and thus should not retain its ill-gotten profits. *Id.* To be sure, this equitable claim related specifically to the labor and resources that Atalian provided to Taj. *Id.* Atalian would have paid these expenses whether it used Taj, another subcontractor, or performed the work itself. Therefore, these labor and resource expenses are not recoverable. But the equitable rationale regarding deterrence and ill-gotten gains still applies. Even if Taj performed all the work satisfactorily, it would be inequitable for Taj to retain monies that it obtained through illicit means. Taj would not be deterred from engaging in bribery again because it retained the profits of the illicit enterprise, even if employee Defendants did not. Accordingly, where there is at least an equitable claim tied into the bribery allegation, the Court finds that Rhode Island law would recognize the briber's ill-gotten profits as an appropriate form of damages.

### 3.   Atalian's Evidence of Damages

The Court first discusses Atalian's evidence of damages and then turns to whether these damages should be doubled pursuant to Rhode Island statute.

#### a. Evidence of Atalian's Damages

As for Taj's profits over the years in which it engaged in the bribery scheme, Atalian has produced the firm's federal tax filings, which included its reported profits. *See* ECF Nos. 106-4, 106-5. Because there is no reason to dispute these numbers, the damages calculation based on ill-gotten profits requires only a simple arithmetic calculation. To be clear, this profits calculation must include the loss that Taj reported in 2015. *See* ECF No. 106-4. The Court sees no reason in law or equity to

15

consider only the years that Taj was profitable when the scheme spanned more than those years.

However, a few years (2013, 2014, and 2019) remain where Atalian alleges that Taj perpetrated this scheme but did not report profits on its federal tax filings. ECF No. 104 at 34. Consequently, Atalian suggests substituting Taj's 2018 profits as a reasonable measure of Taj's 2019 profits. *Id.* at 35. This suggestion appears reasonable given that Taj earned six million dollars from these contracts, the trend in Taj's earnings,[8] and Atalian represented ninety-eight percent of Taj's business. *Id.* at 33-35. But if the Court makes such a substitution, it should also make similar efforts with respect to 2013 and 2014—years during which Taj's federal tax filings also are silent on profits. *Id.* at 34. In 2015, Taj reported a six-figure loss. ECF No. 106-4. The next year, Taj reported profits of only $403. ECF No. 106-5. Therefore, Taj almost certainly lost money in 2013 and 2014. Although, it is unclear how much of Taj's business was attributed to Atalian during those two years. To be fair, the Court would have to figure out which portion of Taj's losses in those two years were attributed to Atalian projects and offset its 2019 profits by that amount.

On these issues, the record lacks evidence. Atalian's substitution methodology is too speculative, and it has not signaled that it could present more concrete evidence. Likewise, Defendants have not signaled that they could present evidence

---

[8] Taj reported losses until 2016, when it reported a profit of just over $400. ECF No. 106-5. From then on, its profits continually climbed by five figures each year. *See id.* It is thus likely that Taj's profits for 2019 were at least as much as the previous year, even if not over the entire year. (Mr. Navarro and Mr. Persaud worked for Atalian until November 4, 2019). ECF No. 41 at ¶ 15.

of Taj's likely losses for those two years. Accordingly, the Court declines to speculate either way on Taj's profits for the years in which its federal tax filings remain silent. The Court thus calculates Taj's profits to be $121,025 (-$135,725 + $403 + $76,801 + $179,546).

Atalian also has produced evidence, such as employee Defendants' federal tax filings, which shows that Atalian paid them $276,250 and $204,650 on top of their regularly expected compensation. *See, e.g.*, ECF Nos. 106-7, 106-8. Neither employee disputes these figures. *See* ECF Nos. 106-2, 106-3. Nor could they seriously dispute the accuracy of these figures without undermining their credibility in other ways. Given the assumed veracity of the allegations in the complaint, the evidence strongly suggests that these payments represent the bribes paid. Once again, Defendants present no theory of their own that explains why these payments are not the value of the bribes that they received. The Court thus calculates the value of the bribes to be $480,900 ($276,250 + $204,650).

### b. Whether Atalian's Damages Should be Doubled

Atalian additionally argues that these damages should be doubled under various justifications. ECF No. 104 at 35-38. "Multiple damages for commercial bribery are based on several policies: to punish, to deter, to compensate for the plaintiff's hard-to-prove loss, to encourage private litigation, and to unwind the defendant's unjust enrichment."[9] Rendleman, *supra*, at 449 (footnote omitted). Some

---

[9] This Article, however, stresses that these policy justifications become inapplicable in statutory cases in which the Court must apply the unambiguous text of the statute. Rendleman, *supra*, at 447. But all Rhode Island's statute says is that

of these rationales, however, overlap with other damages that Atalian seeks. For example, Atalian brings separate causes of action for unjust enrichment, and thus the Court would be allowing for double recovery by also premising double damages on that rationale. And because the Court awards damages equal to Taj's profits under a theory of unjust enrichment—even if such theory is subsumed by the civil bribery statute—those damages cannot be properly doubled. Meaning, the Court already has awarded damages under an equitable theory of deterrence, and thus doubling those damages to serve the same rationale would be duplicative. Still, Atalian maintains unaccounted for costs from investigating and litigating this case.[10] Similarly, Atalian suggests that underenforcement of criminal bribery statutes requires additional civil damages. ECF No. 104 at 36-37. The deterrence and punishment rationales also apply given the willful nature of the conduct.[11] *See* ECF No. 103 (highlighting Defendants' conduct). The Court thus doubles the damages that are based on the value of the bribes, but not the damages that are based on Taj's profits. Accordingly, the Court awards total damages from the bribery scheme in the amount of $1,082,825 (($480,900 * 2) + $121,025), jointly and severally, against all three Defendants.

---

a "person injured . . . *may* recover . . . twice the amount of the injury." R.I. Gen. Laws § 11-7-6 (emphasis added). Because the statute provides no further guidance on how a Court might decide whether to impose double damages, the Court must resort to the earlier cited common law rationales.

[10] Because the Court considers these rationales for double damages, it declines to award costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. Separately awarding costs, while considering such costs as a reason to double damages, would allow for double recovery.

[11] Because the Court considers these rationales for double damages, it declines to also award punitive damages. Awarding punitive damages, which presume the same rationales, would allow for double recovery.

### C. Damages for Unjust Enrichment

Atalian finally seeks return of the compensation that it paid to Mr. Navarro ($554,599.93) and Mr. Persaud ($508,950.49). ECF No. 104 at 38-42. These figures come directly from employee Defendants' federal tax filings whose accuracy is not disputed. ECF Nos. 106-7, 106-8. While Defendants address the unjust enrichment claim for resources used by the firms (Count IX), they do not address the unjust enrichment regarding salaries (Count X). *See* ECF No. 110 at 16-17. Rhode Island courts have recognized a cause of action for unjust enrichment to recover the salaries of disloyal employees. *See, e.g.*, *Baris v. Steinlage*, No. C.A. 99-1302, 2003 WL 23195568, at *27 (R.I. Super. Dec. 12, 2003); *Brown v. Migneault*, No. 80-3111, 1982 WL 604126, at *1 (R.I. Super. Nov. 26, 1982). Atalian also alleged a breach of the duty of loyalty by employee Defendants. ECF No. 41 at ¶ 71. And "where breach of fiduciary duty is involved, the Rhode Island courts have looked to equity for appropriate remedial principles." *Lawton v. Nyman*, 327 F.3d 30, 43 (1st Cir. 2003) (citing *Matarese v. Calise*, 305 A.2d 112, 119 (R.I. 1973)). Accordingly, the Court awards damages for unjust enrichment in the amounts of $554,599.93 against Mr. Navarro and $508,950.49 against Mr. Persaud.

### III. CONCLUSION

In sum, the Court awards Atalian $3,178,078.79, as follows:

- $1,031,703.37 for the ghost employee scheme, jointly and severally, against Mr. Navarro and Mr. Persaud; and

- $1,082,825 for the bribery scheme, jointly and severally, against all three Defendants; and

- $554,599.93 against Mr. Navarro for unjust enrichment; and

- $508,950.49 against Mr. Persaud for unjust enrichment.

Pursuant to R.I. Gen. Laws § 9-21-10(a), Atalian is entitled to prejudgment interest of twelve percent per annum. Final judgment shall enter for Atalian.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.
_____
John J. McConnell, Jr.
Chief Judge
United States District Court

June 02, 2023